1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11

MONTE L. HANEY,

No. 2: 16-cv-1173 TLN KJN P

12

Plaintiff,

13

v.

ORDER and FINDINGS AND
RECOMMENDATIONS

14

S. JOHNSON, et al.,

15

Defendants.

16

17

I.  Introduction

18

Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant

19

to 42 U.S.C. § 1983.  Pending before the court is defendants' motion for summary judgment and

20

plaintiff's motion to stay defendants' summary judgment motion pursuant to Federal Rule of

21

Civil Procedure 56(d).  (ECF Nos. 45, 51.)  Plaintiff also filed an opposition to defendants'

22

summary judgment motion, in addition to his motion to stay, and a motion requesting that the

23

court issue a discovery order.  (ECF Nos. 43, 50.)  Defendants also move to stay discovery

24

pending resolution of the summary judgment motion.  (ECF No. 47.)

25

For the reasons stated herein, the undersigned recommends that defendants' summary

26

judgment motion be granted in part and denied in part.  The undersigned also recommends that

27

plaintiff's motion to stay be denied as unnecessary.  Defendants' motion to stay discovery is

28

1    granted.  Plaintiff's motion for issuance of a discovery order is denied without prejudice.

2    II.  Legal Standard for Summary Judgment

3         Summary judgment is appropriate when it is demonstrated that the standard set forth in

4    Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if the

5    movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

6    judgment as a matter of law."  Fed. R. Civ. P. 56(a).

7              Under summary judgment practice, the moving party always bears
              the initial responsibility of informing the district court of the basis
8             for its motion, and identifying those portions of "the pleadings,
              depositions, answers to interrogatories, and admissions on file,
9             together with the affidavits, if any," which it believes demonstrate
              the absence of a genuine issue of material fact.
10

11   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

12   56(c)).

13        "Where the nonmoving party bears the burden of proof at trial, the moving party need

14   only prove that there is an absence of evidence to support the non-moving party's case."  Nursing

15   Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376,

16   387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory

17   committee's notes to 2010 amendments (recognizing that "a party who does not have the trial

18   burden of production may rely on a showing that a party who does have the trial burden cannot

19   produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment

20   should be entered, after adequate time for discovery and upon motion, against a party who fails to

21   make a showing sufficient to establish the existence of an element essential to that party's case,

22   and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.

23   "[A] complete failure of proof concerning an essential element of the nonmoving party's case

24   necessarily renders all other facts immaterial."  Id. at 323.

25        Consequently, if the moving party meets its initial responsibility, the burden then shifts to

26   the opposing party to establish that a genuine issue as to any material fact actually exists.  See

27   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

28   establish the existence of such a factual dispute, the opposing party may not rely upon the

                                              2

allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

3

trial.'" <u>Matsushita</u>, 475 U.S. at 586 (citation omitted).

By contemporaneous notice provided on June 10, 2016 (ECF No. 10), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. <u>See</u> <u>Rand v. Rowland</u>, 154 F.3d 952, 957 (9th Cir. 1998) (<u>en banc</u>); <u>Klingele v. Eikenberry</u>, 849 F.2d 409 (9th Cir. 1988).

III. <u>Plaintiff's Claims</u>

This action proceeds on the original complaint as to defendants Johnson, Ramirez, Cross, Herring, Fields, Larios, Turner and Baker.

Plaintiff alleges that while he was housed at California State Prison-Sacramento ("CSP-Sac"), on October 14, 2015, at approximately 10:20 a.m., he was beaten and stabbed by approximately twenty inmates. (ECF No. 1 at 5.) The inmates attacked plaintiff because they believed he had stolen six cell phones from them on October 9, 2015. (<u>Id.</u> at 7.) After the incident, defendant Johnson and other prison staff took plaintiff to the medical department. (<u>Id.</u> at 5.) During this transport, plaintiff heard defendant Johnson say, "My partner told me it was going down today." (<u>Id.</u>) Plaintiff then asked defendant Johnson who told him "it's going down today." (<u>Id.</u>) Defendant Johnson refused to talk any further. (<u>Id.</u>)

Approximately ten minutes later, defendant Ramirez came to speak with plaintiff at the infirmary. (<u>Id.</u>) Defendant Ramirez told plaintiff that the day before, a confidential informant inmate told him that inmates were planning to attack plaintiff because they believed that plaintiff had stolen six cell phones belonging to inmates. (<u>Id.</u> at 5-6.) Plaintiff asked defendant Ramirez for the name of the confidential informant. (<u>Id.</u> at 6.) Defendant Ramirez refused to give plaintiff the name of the confidential informant. (<u>Id.</u>)

On October 14, 2015, before the incident, plaintiff noticed that everything was closed during yard time, including the gym, law library, canteen and package room. (<u>Id.</u>) Plaintiff noticed that defendants Johnson, Ramirez, Baker, Larios, Cross, Herring and Turner were standing out on the yard, as if they were waiting for an incident to occur. (<u>Id.</u>) Plaintiff noticed that defendants were looking at the area of the yard where plaintiff was required to stay during yard time, because that section of the yard was designated for inmates from the Bay Area. (<u>Id.</u> at

6-7.)

Plaintiff alleges that, prior to the assault, defendants received information from a confidential informant inmate, that numerous inmates planned to stab plaintiff. (Id. at 7.) Plaintiff alleges that the defendants refused to intervene and allowed the attack to occur. (Id.)

Plaintiff alleges that defendants failed to protect him from harm by other inmates in violation of the Eighth Amendment.

IV.  Defendants' Motion for Summary Judgment

A.  Timing of Defendants' Motion, Plaintiff's Receipt of Summary Judgment Motion

At the outset, the undersigned observes that in plaintiff's opposition to defendants' motion to stay discovery plaintiff alleges that he did not receive defendants' summary judgment motion. (ECF No. 48 at 3.)  Plaintiff also argues that defendants' motion is not proper because it was filed before the court issued a discovery order and the parties were able to conduct discovery. (Id.)

In the reply to plaintiff's opposition to defendants' motion to stay, defendants argue that plaintiff did not prove that he failed to receive the summary judgment motion. (ECF No. 49 at 2.) Defendants state that they will send plaintiff a second copy of their motion as a courtesy. (Id.) Based on plaintiff's filing of his opposition addressing the merits of defendants' summary judgment motion, the undersigned finds that plaintiff received defendants' summary judgment motion.

With respect to plaintiff's argument that defendants' motion is premature because the parties have not conducted discovery, Federal Rule of Civil Procedure 56(b) provides that a summary judgment motion may be brought at any time until thirty days after the close of discovery.  Thus, plaintiff's argument that defendants' motion is premature is without merit.  The undersigned herein separately addresses plaintiff's motion to stay defendants' summary judgment motion, pursuant to Rule 56(d).

B.  Failure to Exhaust Administrative Remedies

Defendants argue that plaintiff failed to exhaust administrative remedies as to all defendants but for defendant Johnson.

////

1    1. <u>Legal Standard for Exhaustion of Administrative Remedies</u>

2    Section 1997e(a) of the Prison Litigation Reform Act of 1995 (PLRA) provides that "[n]o

3   action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other

4   Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

5   administrative remedies as are available are exhausted." 42 U.S.C.§ 1997e(a). Prisoners are

6   required to exhaust the available administrative remedies prior to filing suit. <u>Jones v. Bock</u>, 549

7   U.S. 199, 211 (2007); <u>McKinney v. Carey</u>, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).

8    Exhaustion is required regardless of the relief sought by the prisoner and regardless of the

9   relief offered by the process, unless "the relevant administrative procedure lacks authority to

10   provide any relief or to take any action whatsoever in response to a complaint." <u>Booth v.</u>

11   <u>Churner</u>, 532 U.S. 731, 736, 741 (2001); <u>Ross v. Blake</u>, 136 S.Ct. 1850, 1857, 1859 (2016). The

12   exhaustion requirement applies to all prisoner suits relating to prison life. <u>Porter v. Nussle</u>, 534

13   U.S. 516, 532 (2002). An untimely or otherwise procedurally defective appeal will not satisfy the

14   exhaustion requirement. <u>Woodford v. Ngo</u>, 548 U.S. 81, 90-91 (2006).

15    As the U.S. Supreme Court recently explained in <u>Ross</u>, 136 S. Ct. at 1856, regarding the

16   PLRA's exhaustion requirement:

17
     [T]hat language is "mandatory": An inmate "shall" bring "no action"
18   (or said more conversationally, may not bring any action) absent
     exhaustion of available administrative remedies.... [T]hat edict
     contains one significant qualifier: the remedies must indeed be
19   "available" to the prisoner. But aside from that exception, the
     PLRA's text suggests no limits on an inmate's obligation to
20   exhaust—irrespective of any "special circumstances."

21   <u>Id.</u> (internal citations omitted).

22    Exhaustion of administrative remedies may occur if, despite the inmate's failure to comply

23   with a procedural rule, prison officials ignore the procedural problem and render a decision on the

24   merits of the grievance at each available step of the administrative process. <u>Reyes v. Smith</u>, 810

25   F.3d 654, 659 (9th Cir. 2016) (although inmate failed to identify the specific doctors, his grievance

26   plainly put prison on notice that he was complaining about the denial of pain medication by the

27   defendant doctors, and prison officials easily identified the role of pain management committee's

28   involvement in the decision-making process).

6

        2. <u>Discussion</u>

It is undisputed that SAC C-15-03571 is the only inmate appeal submitted by plaintiff

concerning the October 14, 2015 incident at CSP-Sac.  (<u>See</u> ECF No. 45-2 at 4 (defendants'

statement of undisputed facts, undisputed fact no. 23); ECF No. 50 at 18 (plaintiff's response to

defendants' statement of undisputed facts).)  Defendants argue that grievance SAC C-15-03571

did not exhaust administrative remedies as to defendants Ramirez, Cross, Herring, Fields, Larios,

Turner and Baker because they were not named in this grievance.

A copy of grievance SAC C-15-03571 is attached to defendants' summary judgment

motion.  (ECF No. 45-4.)  The undersigned describes this grievance herein.

In the first level of grievance SAC C-15-03571, plaintiff wrote that on October 14, 2015,

defendant Johnson failed to protect him from being beaten and stabbed by twenty inmates.  (<u>Id.</u> at

18.)  Plaintiff wrote that defendant Johnson stated that, "my partner told me that it was going

down today."  (<u>Id.</u> at 19.)  Plaintiff wrote that defendant Johnson knew that his safety was at risk

but failed to protect him.  (<u>Id.</u>)

Grievance SAC -15-03571 was bypassed at the first level of review.  (<u>Id.</u> at 18.)  The

grievance was granted in part at the second level.  (<u>Id.</u>)  The response to the second level

grievance stated, in part, that plaintiff was interviewed on November 16, 2015, by Sergeant

Baker.  (<u>Id.</u> at 21.)  During the interview, plaintiff stated that on October 14, 2015, defendant

Johnson failed to protect plaintiff from being attacked by approximately twenty inmates.  (<u>Id.</u>)

The response states that defendant Johnson was interviewed in response to plaintiff's grievance.

(<u>Id.</u>)  The response does not state that plaintiff accused any other prison officials of failing to

protect him on October 14, 2015.  (<u>Id.</u>)

In the appeal to the third level of review, plaintiff made the same allegations against

defendant Johnson as made in the first level grievance.  (<u>Id.</u> at 20.)  Plaintiff also wrote that on

October 14, 2015, during the C Facility morning yard, "all staff were standing on the yard as if

they were waiting for an incident to happen."  (<u>Id.</u> at 18.)  Plaintiff wrote that defendant Ramirez

told him that an inmate had told him that there was tension on the yard because of the six missing

cell phones, and that the Southern Mexicans planned to attack a Black inmate from the Bay Area

named "Tay." (Id. at 20.)

The response to plaintiff's third level grievance describes plaintiff's argument as being that defendant Johnson failed to protect him from the October 14, 2015 attack. (Id. at 15.) The response states that plaintiff requested that defendant Johnson reveal the names of all personnel who knew about the situation prior to the incident. (Id.) The third level response concluded that plaintiff's allegation was appropriately reviewed and evaluated by administrative staff. (Id.)

The amount of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures. Jones v. Bock, 549 U.S. 199, 218 (2007); see also Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) ("To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations"). California prisoners are required to lodge their administrative complaint on a CDCR–602 form (or a CDCR–602 HC form for a health-care matter). The level of specificity required in the appeal is described in a regulation:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal. If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question. [¶] The inmate or parolee shall state all facts known and available to him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal form, and if needed, the Inmate/Parolee Appeal Form Attachment.

Cal. Code Regs. tit. 15, § 3084.2(a)(3–4).

"Administrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the appellant that was not included in the originally submitted CDCR Form 602." Cal. Code Regs. tit. 15, § 3084.1(b) (2016); see also Valencia v. Gipson, 2015 WL 2185220, *10 (E.D. Cal. 2015).

Grievance SAC -15-03571 did not exhaust administrative remedies as to Ramirez, Cross, Herring, Fields, Larios, Turner and Baker because they were not named in plaintiff's first level grievance, as required by Cal. Code Regs. tit. 15, § 3084.2(a) (3–4). The first level grievance

only named and discussed defendant Johnson. The allegations in the first level grievance would not have put the prison officials reviewing the grievance on notice that plaintiff was alleging that other prison officials had knowledge of the attack prior to its occurrence.

Identifying and discussing defendant Ramirez in the third level grievance did not exhaust administrative remedies as to this defendant as he was not named and discussed in the first level grievance. See Cal. Code Regs. tit. 15, § 3084.1(b). The response to the third level grievance indicates that only plaintiff's claims against defendant Johnson were considered.

For the reasons discussed above, the undersigned recommends that defendants' motion for summary judgment on the grounds that plaintiff failed to exhaust administrative remedies as to defendants Ramirez, Cross, Herring, Fields, Larios, Turner and Baker be granted.

C. Failure to Protect Claim Against Defendant Johnson

1. Legal Standard

Under the Eighth Amendment, prison officials must "take reasonable measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526–27 (1984). This responsibility requires prison officials to protect prisoners from injury by other prisoners. Farmer v. Brennan, 511 U.S. 825, 833–34 (1994).

A "failure to protect" claim under the Eighth Amendment requires a showing that "the official [knew] of and disregard[ed] an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 842. (citations omitted). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, ...and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. (citations omitted).

The Eighth Amendment requires more than a "mere threat" of possible harm. See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986) ("The standard does not require that the guard or official believe to a moral certainty that one inmate intends to attack another at a given place at a

9

time certain before that officer is obligated to take steps to prevent such an assault. But, on the other hand, he must have more than a mere suspicion that an attack will occur.") While a prisoner's failure to give prison officials advance notice of a specific threat is not dispositive with respect to whether prison officials acted with deliberate indifference to the prisoner's safety needs, deliberate indifference will not be found where there is no other evidence in the record showing that the defendants knew of facts supporting an inference and drew the inference of substantial risk to the prisoner. Labatad v. Corrs. Corp. of America, 714 F.3d 1155, 1160-61 (9th Cir. 2013).

    2. Discussion

    Defendants argue that defendant Johnson had no prior knowledge of the attack. Defendants also argue that plaintiff's evidence does not show that defendant Johnson had knowledge of any specific threat against plaintiff.

    Defendants do not dispute that on October 14, 2015, plaintiff was attacked by other inmates on C yard at CSP-Sac, because the other inmates believed that plaintiff had stolen some cell phones from them on October 9, 2015. (ECF No. 45-2 at 2 (defendants' undisputed fact no. 2.)) Defendants cite defendant Johnson's declaration in support of their argument that defendant Johnson had no prior knowledge of the attack. In his declaration, defendant Johnson states, in relevant part,

> 3. Since coming to CSP-Sacramento in approximately 2012, my primary assignment was as a control booth officer assigned to Facility C-2 control on first watch. First watch runs from 10:00 p.m. (2200 hours) to 6:00 a.m. (0600 hours). During this shift, I could not leave the control booth until relieved by the officer assigned to second watch. I was the only one in the control booth on first watch. I did not have a partner. My regular days off were Monday and Tuesday.

> 4. My duties as a first watch control booth officer consisted primarily of processing outgoing mail, opening doors for officers coming in to the Facility to conduct counts, and releasing inmates scheduled for work at approximately 4:00 a.m. There is no yard during first watch, and I could not talk to inmates during my shift because they were in their cells and too far away to speak with.

> 5. As reflected in the redacted sign-in sheets attached as Exhibit A, I worked my regular first watch control shift in Facility C-2 on October 9, 10, 11 and 14, 2015. I worked an overtime shift on October 10, 2015 on third watch (2:00 to 10:00 p.m.) as a floor officer in the A Facility Psychiatric Services Unit (PSU); and an

overtime shift as a Facility C-3 floor officer on second watch (6:00 a.m. to 2:00 p.m.) on October 14, 2015. I recognize my signature on the lines indicating "Johnson, S." on Exhibit A. I did not work on October 12, and 13, 2015, which were my regular days off.

6. During my overtime shift as a floor officer in Facility C-3 on October 14, 2015, I responded to an incident on C-yard, but by the time I arrived the incident was over and yard was down. I did not see any use of force or any fight or attack when I arrived. My only involvement with Haney on October 14, 2015, was to assist another officer escorting Haney to the Facility A triage and treatment area for medical examination and treatment. During this escort I made a comment that the yard seemed tense, as if something was going to happen. However, I did not make the statement: "My partner told me it was going down today" that Haney attributes to me in his complaint.

7. I did not know Haney and had no previous interactions with him. Mr. Haney did not tell me prior to the attack that he feared for his safety on the yard. Had he told me this, I would have taken appropriate steps [to] have him rehoused. No one told me that Haney was in danger of being attacked on October 14, 2015, or that any particular group of inmates was planning to assault an inmate in general, or Haney specifically.

8. Because my primary shift was first watch, I was not in a position to observe inmates on the yard, their interactions, or their activities on a daily basis. Moreover, because I was not a yard or floor officer who regularly would have interacted with inmates on C Yard, I had no knowledge of inmate politics on C yard, or any specific knowledge of things (such as the stolen inmate cell phones) that could have been causing tension among inmates on the yard.

(ECF No. 45-9 at 2-3.)

Defendants argue that plaintiff's vague, self-serving statement that defendant Johnson told him that his partner told him that "it was going down today," is devoid of factual content or any indication that defendant Johnson had anything other than some "gut" feeling that the yard was tense.

In his verified declaration submitted in support of his opposition, plaintiff states that after the October 14, 2015 incident, he heard defendant Johnson state to another staff member while he escorted plaintiff to the infirmary, "My partner told me it was going down today." (ECF No. 50 at 20-21.) When plaintiff asked defendant Johnson who told him that it was going down today, defendant refused to answer. (Id. at 21.) Plaintiff also states that after the incident, defendant Ramirez told plaintiff that an inmate informant had told defendant Ramirez that numerous

11

inmates planned to attack plaintiff for allegedly stealing cell phones. (Id.) Defendant Ramirez allegedly told plaintiff that he received this information "days" before the October 14, 2015 incident. (Id.)

Considering plaintiff's verified allegations, the undersigned finds that a reasonable jury could conclude that defendant Johnson was referring to the planned attack on plaintiff when he allegedly said, "my partner told me it was going down today." Plaintiff's claim that defendant Ramirez told him that a confidential inmate informant had informed him of the planned attack supports this inference. Defendant Johnson's alleged refusal to discuss the matter further with plaintiff also supports this inference. Thus, whether defendant Johnson had prior knowledge that the inmates planned to attack plaintiff is a disputed material fact.

The undersigned has reviewed the cases cited by defendants in support of their argument that plaintiff has not demonstrated that defendant Johnson had knowledge of a specific threat to his safety, i.e., Labatad v. Corrections Corp. of America, 714 F.3d 1155 (9th Cir. 2013); Thompson v. Lee, 2015 WL 769683 (E.D. Cal. 2015); Jones v. Roszko, 2013 WL 5519974 (E.D. Cal. 2013); Jones v. Ryan, 2011 WL 227569 (S.D. Cal. 2011). These cases can be distinguished from the instant case.

In Labatad, the plaintiff had a fight with inmate Giddeons. 714 F.3d at 1156. Plaintiff was a member of the La Familia gang. Id. Giddeons was a member of the USO Family gang. Id. A guard noticed that plaintiff's face was swollen and scratched, so prison officials investigated the incident. Id. Both plaintiff and Giddeons told investigators that the fight was not gang related. Id. Both reported that after the fight, they shook hands and had no further issues. Id.

Following usual practice, prison officials placed the inmates involved in the fight in administrative segregation during the investigation. Id. Plaintiff was assigned to share a cell with inmate Mara, who was a member of the USO Family gang. Id. Plaintiff and Mara had known each other during the extended period both were in the general population, and there had been no difficulties between them. Id. They were not labeled as enemies. Id. However, three days later, Mara assaulted plaintiff. Id. Mara told prison officials investigating the incident that he assaulted plaintiff because he was a La Familia member, and Mara thought that plaintiff would attack

unless he did so first.  Id.

The plaintiff in Labatad filed a lawsuit alleging that prison officials violated his Eighth Amendment rights by failing to protect him from Mara.  Plaintiff alleged that prison officials were deliberately indifferent to the risk of harm from the cell assignment with Mara.  Id. at 1160. The Ninth Circuit found that, viewed objectively and subjectively, the record was insufficient to preclude summary judgment as to plaintiff's claim that prison officials were "deliberately indifferent to a substantial risk of harm that Mara would assault [plaintiff] with no record of any threats or problems between them."  Id. at 1161. The Ninth Circuit noted that Mara was not listed as plaintiff's enemy.  Id.  In addition, plaintiff and Giddeons had assured prison officials that their fight was not gang related and that there was no issue between them.  Id.

In addition, the Ninth Circuit found,

> Labatad argues that the record supports an inference of subjective awareness of the risk because of his evidence that he told an SCC officer that he should not be housed with Mara.  But [plaintiff] provided no specifics about this conversation.  Without more, such as information about who [plaintiff] spoke to or what he said, we cannot infer that any of the defendants or officials responsible for making the assignment were aware that [plaintiff] faced a substantial risk of harm.  See Wood v. Beauclair, 692 F.3d 1041, 1051 (9th Cir. 2012) (concluding that prison supervisors lacked knowledge of the risk in part because the prisoner "never" disclosed [the sexual abuser's] actions to prison officials until long after the incidents at issue in this case occurred.")  While the failure to give advance notice of a specific threat is not dispositive, there is no other evidence in the record showing that the defendants knew of facts supporting an inference and drew the inference of a substantial risk to Labatad if he was placed in a cell with Mara.

Id.

As indicated above, in Labatad, the Ninth Circuit considered whether plaintiff presented sufficient evidence that prison officials had knowledge of a threat he communicated to an unidentified prison official.  In addition, the Ninth Circuit found that the record did not contain evidence demonstrating a substantial risk that Mara would assault the plaintiff.

In contrast to Labatad, plaintiff in the instant action alleges that defendant Johnson made a statement indicating that he had knowledge that other inmates planned to attack plaintiff, but took no steps to protect him.  Plaintiff's claim that defendant Ramirez told him that a confidential

13

informant told him that the inmates planned to attack plaintiff supports the inference that defendant Johnson's statement referred to the planned attack. Thus, plaintiff alleges that defendant Johnson had knowledge of a specific, as opposed to a general, threat of harm to plaintiff, i.e., that other inmates planned to attack plaintiff in retaliation for allegedly stealing cell phones.

In <u>Thompson v. Lee</u>, 2015 WL 769683 (E.D. Cal. 2015), the court granted summary judgment in favor of several correctional officers on a failure to protect claim because the plaintiff failed to present evidence that each defendant was aware of the particular danger from which they allegedly failed to protect him. In <u>Thompson</u>, the plaintiff alleged that defendants repeatedly housed him with inmates who were his enemies in disregard of his safety. 2015 WL 769683 at *1-3. The district court granted summary judgment to the defendants because there was no evidence that any defendant had any knowledge of a specific risk that plaintiff was exposed to, and there were no facts from which defendants could infer a specific threat of harm to plaintiff. <u>Id.</u> *5-17. The court found that plaintiff's evidence established, at most, "some generalized fear of harm based upon membership in the Bloods gang or the fact that Campbell was a Muslim and plaintiff was not." <u>Id.</u> at * 17.

In contrast to <u>Thompson</u>, in the instant case, plaintiff does not allege a general risk to his safety. Plaintiff alleges that defendant Johnson had knowledge of a specific risk to his safety, i.e., that other inmates planned to attack him in retaliation for allegedly stealing cell phones.

In <u>Jones v. Roszko</u>, 2013 WL 5519974 at *7 (E.D. Cal. 2013), the court found that the general statement that a correctional officer was "made aware" other inmates would attack plaintiff was insufficient to defeat summary judgment. In <u>Jones</u>, in relevant part, the plaintiff alleged that defendant Arthur "was made aware that plaintiff was order [sic] back to Building 16 ware [sic] [Arthur's] staff knew [plaintiff] would be attack[sic]." 2013 WL 55519974 at *7. The court found that, "[t]his bare allegation is insufficient to show that Arthur was personally aware of and consciously disregarded an excessive risk to plaintiff's safety prior to the evens of August 2, 2008." (<u>Id.</u>) "None of the evidence in the record shows that Arthur was informed of the danger to plaintiff by his staff or that Arthur otherwise knew at any time prior to the attack that

plaintiff was in jeopardy of being harmed by other inmates." (Id.)

The instant case can be distinguished from Jones. In the instant case, plaintiff alleges that he heard defendant Johnson state that he knew from his partner that "it" was going down that day. As discussed above, based on the circumstances, it is not unreasonable to infer that defendant Johnson was referring to the attack on plaintiff. In contrast to the plaintiff's allegations against defendant Arthur in Jones, plaintiff in the instant case has made more than a bare allegation that defendant Johnson knew of and disregarded the risk to plaintiff.

In Jones v. Ryan, 2011 WL 227569 (S.D. Cal. 2011), in relevant part, plaintiff alleged that defendant Wells, "who was the officer in the control tower responsible for opening and closing cell doors, 'appeared to have prior knowledge of the forthcoming attack' by Defendants Torres and Schommer and Ortiz because he opened the door to Plaintiff's cell to allow them to enter." 2011 WL 227569 at *5.

> Defendant Wells argues that there is no evidence of any "discussion regarding a plot to use excessive force against Plaintiff." (Defs.' P & A's in Supp. of Summ. J. at 11.) Plaintiff responds by asserting that there was a discussion among Defendants Torres, Schommer, Ortiz, Mejia and Wells prior to Wells opening Plaintiff's cell door. (See Pl.'s Amd. Opp'n at 4.) However, while Plaintiff testified that the conversation which formed the "plan of attack" against him took place outside of the control tower, he also testified that Wells was in the control tower during the entire incident. (See Defs.' Ex. 1, Pl.'s Depo. at 49:22–25; 49:11–15.)
>
> Plaintiff's only evidence to support his claim that Defendant Wells knew of the attack is his allegation that Defendant Torres asked Defendant Schommer "are you ready" immediately prior to entering Plaintiff's cell, which he claims is indicative of a "preplanned attack" on Plaintiff." (See Pl.'s Amd. Opp'n at 4.) However, "sweeping conclusory allegations will not suffice to prevent summary judgment" on Plaintiff's Eighth Amendment claims against Defendant Wells. Leer v. Murphy, 844 F.2d 628, 634 (1988) (citing Berg, 794 F.2d at 460.)
>
> ****
>
> These allegations are mere speculation by Plaintiff as to what was said or heard by Defendant Wells, whom Plaintiff acknowledges was in the control tower during the entire incident. Thus, Plaintiff has pointed to no evidence in the record to show that Defendant Wells had any actual knowledge of a "substantial risk of serious harm" to Plaintiff in his prison cell. Farmer, 511 U.S. at 842. Based on the lack of a triable issue of material fact, the Court GRANTS Defendant Wells' Motion for Summary Judgment as to Plaintiff's Eighth

15

Amendment failure to protect claims.

Id.

Defendant Johnson's alleged statement, i.e., "my partner told me it was going down today," is not a "sweeping conclusory allegation," particularly when combined with plaintiff's allegation that defendant Ramirez told him that an inmate informant had informed prison officials of the planned attack. For these reasons, the instant case is distinguished from Jones v. Ryan.

Citing defendant Johnson's declaration, defendants argue that there is a lack of evidence from which a reasonable jury could infer that defendant Johnson could have known that other inmates planned to attack plaintiff. Defendants argue that defendant Johnson was not aware of any danger to plaintiff and was not in a position to be aware of such danger. Defendants argue that plaintiff was housed on Facility C-1 and defendant worked primarily on C-2, as a control booth officer. Defendants argue that defendant Johnson had no knowledge of inmate activities or reasons for tensions on C-yard, and had little opportunity to learn them. Defendants argue that defendant Johnson did not work two of the five days between October 9-14, 2015, and while he worked an overtime shift on second watch as a floor officer on Facility C-3 on October 14, 2013, he was not assigned to plaintiff's building. Defendants also argue that plaintiff did not inform defendant Johnson that he was in danger of being assaulted.

While defendant Johnson's work schedule and work assignments may have made it less likely for him to be in a position to obtain information about inmate activities in plaintiff's building and yard, the undersigned cannot find that defendants' work schedule and work assignments precluded him from obtaining this information. In connection with this finding, the undersigned does not understand defendant Johnson's observation following the incident that "the yard seemed tense, as if something was going to happen," if he was working as a Facility C-3 Floor officer at the time of the incident.

In the reply, defendants also argue while plaintiff avers that defendant Ramirez had prior knowledge of the planned attack, plaintiff provides no evidence that defendant Ramirez provided this information to defendant Johnson. Plaintiff's failure to provide, on summary judgment, evidence that defendant Ramirez told defendant Johnson about the planned attacks does not mean

16

that defendant Johnson did not have prior knowledge of the attack.

Defendants also argue that it "strains common sense" to think that inmates who were missing contraband cell phones would disclose that fact to any officer, given that possession of such material is illegal, and would subject those inmates to disciplinary and possibly criminal charges. Defendants' argument presumes that an inmate, whose cell phone plaintiff took, informed prison officials of the planned attack. Defendants offer no evidence in support of this argument. In any event, the undersigned is not persuaded by this argument.

Defendants also argue that plaintiff admits that he never informed defendant Johnson that he was in danger of being assaulted by other inmates. However, plaintiff appears to claim that he (plaintiff) had no prior knowledge of the attack. Plaintiff's failure to inform defendant Johnson that he was in danger of being assaulted before the attack does not render plaintiff's claim without merit.

For the reasons discussed above, the undersigned finds that whether defendant Johnson had knowledge that the inmates planned to attack plaintiff prior to the October 14, 2015 incident is a materially disputed fact. Plaintiff has presented sufficient evidence from which a reasonable jury could infer that defendant Johnson had knowledge of a specific risk of harm to plaintiff's safety. Accordingly, defendant Johnson should be denied summary judgment.

3. Qualified Immunity

Defendants argue that defendant Johnson is entitled to qualified immunity.

1. Legal Standard

Government officials enjoy qualified immunity from civil damages unless their conduct violates clearly established statutory or constitutional rights. Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a court is presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001), receded from, Pearson v. Callahan, 555 U.S. 223 (2009) (the two factors set out in Saucier need not be considered in

sequence). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011). The existence of triable issues of fact as to whether prison officials were deliberately indifferent does not necessarily preclude qualified immunity. Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1053 (9th Cir. 2002).

"For the second step in the qualified immunity analysis−whether the constitutional right was clearly established at the time of the conduct−the critical question is whether the contours of the right were 'sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" Mattos v. Agarano, 661 F.3d 433, 442 (9th Cir. 2011) (quoting al−Kidd, 563 U.S. at 741) (some internal marks omitted). "The plaintiff bears the burden to show that the contours of the right were clearly established." Clairmont v. Sound Mental Health, 632 F.3d 1091, 1109 (9th Cir. 2011). "[W]hether the law was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition." Estate of Ford, 301 F.3d at 1050 (citation and internal marks omitted).

In making this determination, courts consider the state of the law at the time of the alleged violation and the information possessed by the official to determine whether a reasonable official in a particular factual situation should have been on notice that his or her conduct was illegal. Inouye v. Kemna, 504 F.3d 705, 712 (9th Cir. 2007); see also Hope v. Pelzer, 536 U.S. 730, 741 (2002) (the "salient question" to the qualified immunity analysis is whether the state of the law at the time gave "fair warning" to the officials that their conduct was unconstitutional).

2. Analysis

Defendants argue that defendant Johnson is entitled to qualified immunity as to the first prong of the qualified immunity analysis. In particular, defendants argue that there is no evidence that defendant Johnson was aware of a substantial risk of harm to plaintiff. The undersigned disagrees. For the reasons discussed above, taking the facts in the light most favorable to plaintiff, the evidence demonstrates that defendant Johnson had knowledge of the planned attack prior to it occurring. Accordingly, defendant Johnson is not entitled to qualified immunity on this ground.

Although defendants do not move on this ground, the undersigned finds that a reasonable correctional officer, with knowledge of a planned attack, would know that failing to protect the inmate to be attacked violated that inmate's Eighth Amendment rights.

V. <u>Plaintiff's Motion to Stay Defendants' Summary Judgment Motion</u>

At the outset, the undersigned observes that no discovery order, which usually signals the beginning of discovery in prisoner civil rights actions, has been issued in this case. The undersigned herein sets forth the procedural background of this action which explains why the parties have not yet conducted discovery.

Plaintiff filed the original complaint on May 31, 2016. (ECF No. 1.) After being served with the complaint, defendants filed a motion to revoke plaintiff's in forma pauperis status pursuant to 28 U.S.C. § 1915(g). (ECF No. 15.) After the court denied defendants' § 1915(g) motion (<u>see</u> ECF No. 27), defendants filed a motion to require plaintiff to post security. (ECF No. 28.) After the court denied defendants' motion to require plaintiff to post security (<u>see</u> ECF No. 39), defendants filed an answer, the summary judgment motion and motion to stay discovery. (ECF Nos. 44, 45, 47.)

Federal Rule of Civil Procedure 56(d) permits a party opposing a motion for summary judgment to request an order deferring the time to respond to the motion and permitting that party to conduct additional discovery upon an adequate factual showing. Rule 56(d) provides that the party must "show[ ] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). "A party requesting a continuance pursuant to [Rule 56(d)] must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." <u>Tatum v. City & Cty. of San Francisco</u>, 441 F.3d 1090, 1100 (9th Cir. 2006) (citations omitted).

In the pending motion, plaintiff alleges that discovery is "essential" to oppose defendants' summary judgment motion. (ECF No. 51 at 2.) Plaintiff alleges that defendants refused to respond to his discovery requests on the grounds that they were premature. (<u>Id.</u> at 8.) Plaintiff also requests that the court conduct an in-camera review of the camera footage of the C-Yard on October 14, 2015. (<u>Id.</u> at 5.) Plaintiff argues that the footage will support his claim that the

attack on him was pre-planned and that defendants had knowledge of the attack.  (Id.)

Plaintiff does not claim that he requires discovery in order to respond to defendants' motion for summary judgment on the grounds that he failed to exhaust administrative remedies as to defendants Ramirez, Cross, Herring, Fields, Larios, Turner and Baker.  Accordingly, the motion to stay defendants' summary judgment as to the portion of the motion made on behalf of these defendants should be denied.

In the opposition, defendants argue that plaintiff has not identified what specific discovery propounded to defendant Johnson would uncover with respect to plaintiff's claim against him. (ECF No. 54 a 3.)  Attached to defendants' opposition are copies of the interrogatories, request for production of documents and request for admissions plaintiff earlier served on defendant Johnson.  (Id. at 4-12.)

Because the undersigned recommends that defendant Johnson's summary judgment motion be denied, the undersigned recommends that plaintiff's motion to stay defendant Johnson's summary judgment be denied as unnecessary.  Following the review of these findings and recommendations by the Honorable Troy L. Nunley, the undersigned will grant both parties an opportunity to conduct discovery prior to setting this action for trial, if appropriate.

V.  Defendants Motion to Stay Discovery/Plaintiff's Motion for Discovery Order

Defendants move to stay discovery pending resolution of the summary judgment motion. In contrast, plaintiff requests that the court issue a discovery order, which signals the beginning of the discovery phase of civil rights cases.

Good cause appearing, defendants' motion to stay discovery is granted.  See Boyd v. Etchebehere, 2015 WL 135865 at *1 (E.D. Cal. 2015) ("The avoidance of undue burden of expense is grounds for the issuance of a protective order, Fed. R.Civ. P. 26(c), and a stay of discovery pending resolution of potentially dispositive issues furthers the goal of efficiency for the courts and the litigants.").

As discussed above, the undersigned will issue a discovery order after Judge Nunley's consideration of these findings and recommendations, if appropriate.  Accordingly, plaintiff's motion for issuance of a discovery order is denied without prejudice.

1    Accordingly, IT IS HEREBY ORDERED that:

2    1.  Plaintiff's motion for issuance of a discovery order (ECF No. 43) is denied;

3    2.  Defendants' motion to stay discovery (ECF No. 47) is granted; and

4    IT IS HEREBY RECOMMENDED that:

5    1.  Defendants' motion for summary judgment (ECF No. 45) be granted as to defendants

6    Ramirez, Cross, Herring, Fields, Larios, Turner and Baker; defendants' summary judgment

7    motion be denied as to defendant Johnson.

8    2.  Plaintiff's motion to stay defendants' summary judgment motion, pursuant to Federal

9    Rule of Civil Procedure 56(d) (ECF No. 51) be denied.

10    These findings and recommendations are submitted to the United States District Judge

11    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

12    after being served with these findings and recommendations, any party may file written

13    objections with the court and serve a copy on all parties.  Such a document should be captioned

14    "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

15    objections shall be filed and served within fourteen days after service of the objections.  The

16    parties are advised that failure to file objections within the specified time may waive the right to

17    appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

18    Dated:  October 17, 2018

19

20    KENDALL J. NEWMAN
      UNITED STATES MAGISTRATE JUDGE

21

22

23    Han1173.sj

24

25

26

27

28

21