UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MONTE L. HANEY,

    Plaintiff,

v.

S. JOHNSON, et al.,

    Defendants.

No. 2: 16-cv-1173 TLN KJN P

ORDER

I. Introduction

    Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983. On January 18, 2019, the court granted in part and denied in part defendants' summary judgment motion. (ECF No. 67.) On February 20, 2019, the undersigned granted defendant's motion to modify the scheduling order. (ECF No. 72.) The undersigned ordered that the parties could conduct discovery until May 24, 2019. (Id.) The pretrial conference is set for September 27, 2019. (Id.) The jury trial is set for January 27, 2020, before the Honorable Troy L. Nunley. (Id.)

    Pending before the court are plaintiff's motion to compel (ECF No. 75), motion for issuance of a subpoena (ECF No. 78) and motion to amend the scheduling order. (ECF No. 79.) As set forth below, plaintiff's motions are granted in part and denied in part.

////

1

## II. Background

Following summary judgment, this action proceeds on plaintiff's claim that defendant Johnson failed to protect him from being attacked by other inmates. In particular, plaintiff alleges that on October 14, 2015, on C Facility at California State Prison-Sacramento ("CSP-Sac"), plaintiff was beaten and stabbed by approximately twenty inmates. The inmates attacked plaintiff because they believed he had stolen six cell phones from them on October 9, 2015. Plaintiff alleges that after the incident, defendant Johnson and other prison staff took plaintiff to the medical department. During this transport, plaintiff heard defendant Johnson say, "My partner told me it was going down today." Plaintiff asked defendant Johnson who told him, "it's going down today." Defendant Johnson refused to talk any further.

Plaintiff also alleges that before the October 14, 2015 incident, he noticed that everything was closed during yard time, including the gym, law library, canteen and package room. Plaintiff noticed that defendant Johnson and other prison staff were standing on the yard, as if they were waiting for something to happen. Plaintiff noticed that defendant Johnson and other prison staff were looking at the area of the yard where plaintiff was required to stay during yard time.

Plaintiff alleges that prior to the assault, defendant Johnson received information from a confidential informant that numerous inmates planned to stab plaintiff. Plaintiff alleges that defendant Johnson refused to intervene and allowed the attack to occur.

## III. Failure to Meet and Confer

Defendant argues that plaintiff's motion to compel should be denied because he did not meet and confer with defense counsel before filing the motion as required by Federal Rule of Civil Procedure 37(a). After reviewing the record, it appears that plaintiff failed to meet and confer before filing the motion to compel.

While the undersigned encourages the parties to attempt to resolve disputes prior to seeking court intervention, because of plaintiff's status as a pro se prisoner, the requirements of Rule 37(a) will not provide grounds for denying the motion to compel. It also appears unlikely that the pending discovery disputes would have been resolved had the parties met and conferred.

////

IV. Plaintiff's Motion to Compel and Motion for Issuance of Subpoena

In the motion to compel, plaintiff alleges that defendant failed to adequately respond to request for admissions 3, 7, 9-12, interrogatory 25 and request for production of documents 6-8.

   A. Request for Admissions

*Request 3*

Request for admission 3 states, "If Prison Staff receives information from a inmate Confidential informant that there are problems between inmates of different races which has a potential to cause violence, there are certain Protocols Prison Staff are Required to take." (ECF No. 75 at 10.)

In the opposition to the motion to compel, defendant argues that request 3 seeks information that is not relevant to this action. Defendant argues that plaintiff does not allege that the incident in question was caused by racial tension. Defendant argues that plaintiff alleges that he was assaulted because he was accused of taking cell phones from other inmates. Defendant also argues that the request is vague and ambiguous.

The undersigned agrees with defendant that the information sought in request 3 is not relevant to this action because plaintiff does not claim that the incident in question was caused by racial tension. Because request 3 clearly seeks information not relevant to this action, the undersigned need not address defendant's additional objections. Accordingly, the motion to compel as to request 3 is denied.

*Request 7*

Request 7 states, "The Program office Keeps each Prisoner's Identification and Documents where the Prisoner is from or if that Prisoner is Gang Affiliated." (ECF No. 75 at 11.) Defendant objected to request 7 on the grounds that it contained compound and disjunctive statements. (Id.) Defendant also objected that the request was vague as to time and exceeded the scope of permissible discovery in this case, i.e., sought information not relevant to this action. (Id.)

Defendant raises the same objections in his opposition to the motion to compel. (ECF No. 76 at 4-5.) Defendant argues that the term "prisoner's identification and documents where the

prisoner is from or if that prisoner is gang affiliated" is difficult to comprehend. Defendant states, "[i]s plaintiff seeking an admission that the program office keeps a 'prisoner's identification' *and* separately 'documents [i.e. verb] where the prisoner is from?' Or is he asking an admission that the program office keeps a prisoner's identification *and documents* [noun]? This lack of clarity renders the request impermissibly vague and improper." (Id. at 5.)

The undersigned agrees that request 7 is vaguely worded, for the reasons stated by defendant. In addition, because plaintiff makes no claim that the incident in question was gang-related, information regarding prisoners' gang affiliations is not relevant to this action. For these reasons, the motion to compel as to request 7 is denied.

*Requests 10 and 12*

Request 10 states, "there are confidential informants at C-facility." (ECF No. 75 at 12.) Request 12 states, "there are inmate confidential informants at csp-Sacramento." (Id. at 13.)

Defendant objected to these requests on the grounds that they were vague as to time and place. (Id. at 12-13.) Defendant also objected that these requests improperly appeared to seek information as to the current status of confidential informants on C-facility, and the events at issue in this case occurred in October 2015. (Id. at 12-13.) Defendant also objected that disclosure of such information would implicate the security of CSP-Sac and the safety of inmates and staff. (Id. at 12-13.)

The undersigned agrees that requests 10 and 12 seek information as to the current status of confidential informants in C-facility and CSP-Sac. This information is not relevant to this action. Accordingly, the motion to compel as to requests 10 and 12 is denied on these grounds.

*Requests 9 and 11*

Request 9 states, "there were inmate confidential informants at C-facility on October 14, 2015." (Id. at 12.) Request 11 states, "There were inmate confidential informants at CSP-Sacramento on October 14, 2015." (Id. at 13.)

Defendant objected to request 11, in part, on the grounds that it was vague and overbroad because it failed to specify the portion of the prison plaintiff referred to. (Id. at 13.) This objection has merit. The at-issue incident occurred on the C-Facility Main Yard. (See ECF No.

4

83-1 at 4.) Whether other portions of CSP-Sac had confidential informants on October 14, 2015, is not relevant to this action. Accordingly, the motion to compel as to request 11 is denied on these grounds.

Regarding request 9, in the opposition to the motion to compel, defendant argues that the information sought in this request is not relevant because plaintiff does not allege that defendant received any information from a confidential informant. (ECF No. 76 at 7.) The undersigned disagrees. In the complaint, plaintiff specifically alleges that an inmate informant told "the defendants," including defendant Johnson, that inmates planned to assault plaintiff because of the missing cell phones. (ECF No. 1 at 7.)

In the opposition, defendant also argues that the information sought in request 9 is not relevant because defendant Johnson denies receiving information from any source that inmates planned to attack plaintiff on October 14, 2015. (ECF No. 76 at 7.) Whether defendant Johnson received confidential information that other inmates were planning to attack plaintiff is a disputed fact. Therefore, defendant Johnson's denial of receiving this information does not render plaintiff's request improper.

In the opposition, defendant argues that plaintiff is not seeking the identity of any confidential informants. (Id.) Thus, defendant argues, whether there were confidential informants on C-Facility on October 14, 2015 "does not appear to be information that would advance plaintiff's claim in any respect." (Id.)

Plaintiff is clearly not entitled to information regarding the identity of confidential informants. However, evidence that confidential informants existed on C-Facility on October 14, 2015, may advance plaintiff's claim that a confidential informant gave defendant information that inmates planned to attack plaintiff.[1] Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978) (relevant information encompasses "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case."); Soto v. City of

---

[1] Plaintiff alleges that shortly after the incident, former defendant Ramirez told plaintiff that the day before, an inmate confidential informant told him that inmates planned to attack plaintiff. (ECF No. 1 at 5-6.)

5

Concord, 162 F.R.D. 603, 610 (N.D. Cal. 1995) (quoting Miller v. Panuci, 141 F.R.D. 292, 296 (C.D. Cal. 1992)) ("The question of relevancy should be construed 'liberally and with common sense' and discovery should be allowed unless the information sought has no conceivable bearing on the case.")

Defendant next asserts the official information privilege in response to request 9.[2]

Federal common law recognizes a qualified privilege for official information. Kerr v. U.S. Dist. Ct. for the N. Dist. of Cal., 511 F.2d 192, 198 (9th Cir. 1975). In determining what level of protection should be afforded by this privilege, courts conduct a case by case balancing analysis, in which the interests of the party seeking discovery are weighed against the interests of the governmental entity asserting the privilege. Soto v. City of Concord, 162 F.R.D. at 613–14.

However, before a court will engage in this balancing of interests, the party asserting the privilege must properly invoke the privilege by making a "substantial threshold showing." Soto, 162 F.R.D. at 613.

> In order to fulfill the threshold requirement, the party asserting the privilege must submit a declaration or affidavit from a responsible official with personal knowledge of the matters to be attested to in the affidavit. Id. The affidavit must include: "(1) an affirmation that the agency generated or collected the material in issue and has maintained its confidentiality; (2) a statement that the official has personally reviewed the material in question; (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer; (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, and (5) a projection of how much harm would be done to the threatened interests if disclosure were made."

Soto, 162 F.R.D. at 613 (quoting Kelly v. City of San Jose, 114 F.R.D. 653, 670 (N.D. Cal. 1987)).

The party resisting discovery must specifically describe how disclosure of the requested information in that particular case would be harmful. Soto, 162 F.R.D. at 613-14. If the opposing

---

[2] Defendant argues, "to disclose such information to an inmate would jeopardize the safety of such informants and the security of the institution." (ECF No. 76 at 5.) Based on this statement, the undersigned infers that defendant is invoking the official information privilege.

party fails to meet the threshold burden requirement of establishing cause to apply the privilege, the privilege will be overruled. Chism v. County of San Bernardino, 159 F.R.D. 531, 533 (C.D. Cal. 1994).

Defendant argues that responding to request 9 would jeopardize the safety of informants and the security of the institution. In support of this argument, defendant has provided the declaration of K. Steele, a Sergeant with the Investigative Services Unit ("ISU") at CSP-Sac. (ECF No. 76-3.) In relevant part, K. Steele states,

> 5. I am familiar with the California Department of Corrections and Rehabilitation's (CDCR) policies and procedures for managing confidential information to protect the safety of confidential informants and institutional security. Prison officials are tasked with managing dangerous prisoners and rely on confidential informants to alert them to possible threats to the safety of staff and other prisoners. Prison officials also rely on informants to counter the grave threat, to both institutional security and public safety, posed by secretive prison gangs. Exposing the identity of confidential informants, and the extent of the information provided, places the informants at risk of retaliation from other inmates and discourages other potential informants from coming forward. Moreover, a high value informant's family is at risk when the confidential information is disclosed. Even exposing whether there were or are confidential informants at a particular institution or facility without disclosing their identity puts confidential informants at risk because other inmates then attempt to discover the confidential informant's identity both because of the high value of such information within the prison population and in order to target informants from violent attacks.
>
> 6. Plaintiff is an inmate proceeding pro se. Therefore, disclosure of the confidential information detailed above subject to a protective order is inadequate because of its potential for retribution discussed above and because he has no way to keep the information confidential from other inmates. The importance of keeping this information from inmates is further evidenced by the fact that the mere possession of confidential information, even if obtained through third parties, can subject an inmate to disciplinary action. And the threat of contempt or sanctions from the Court is unlikely to prevent an inmate from disseminating classified information to other inmates, therefore a protective order cannot guarantee that this information will not make its way into the inmate population.

(Id. at 3.)

For the reasons stated herein, the undersigned finds that defendant has not made the substantial threshold showing in order to invoke the official information privilege. In particular, the undersigned finds that K. Steele's declaration does not adequately address how plaintiff

7

would be able to discover the identity of a confidential informant housed at CSP-Sac approximately five years ago. Plaintiff is no longer housed at CSP-Sac. In addition, plaintiff claims that the informant provided information on plaintiff's behalf. In other words, the informant did not provide information detrimental to plaintiff. For this additional reason, the undersigned gives less weight to K. Steele's concern that plaintiff would attempt to discover and target the inmate who allegedly told defendant about the planned attack.[3] For these reasons, the undersigned finds that defendant has not shown how disclosure of the requested information in this particular case would be harmful

Plaintiff's motion to compel as to request for admission 9 is granted because defendant has not met the threshold burden requirement of establishing cause to apply the official information privilege. Defendant shall provide plaintiff with a further response to this request within fourteen days of the date of this order.

B. Request for Production of Documents/Motion for Issuance of Subpoena

Plaintiff claims that defendants failed to adequately respond to request for production of documents 6, 7 and 8. These requests concern plaintiff's review of video footage of the October 14, 2015 incident. In the motion for issuance of a subpoena, plaintiff requests that the court subpoena the camera footage of the incident. Because these matters are related, the undersigned addresses them together herein.

Request 6 states, "Pursuant to Fed. R. Civ. P. 34(a) preserve the camera footage at C-facility CSP-Sacramento dated October 14, 2015 so the Judge assigned to this case can conduct an in camera review of the assault plaintiff received on October 14, 2015." (ECF No. 75 at 18.)

Request 7 states, "Pursuant to Fed. R. Civ. P. 34(a), preserve the camera footage dated October 14, 2015 at C-facility CSP-Sacramento so an independent representative of the court can conduct an inspection of the camera footage." (Id. at 19.)

////

---

[3] K. Steele also appears to conflate the security risks of inmates providing confidential information regarding prison gangs and inmates providing confidential information regarding non-gang matters, as in plaintiff's case. It appears to the undersigned that the security risks to these different types of informants are distinguishable.

In the opposition to the motion to compel, defendant argues that requests 6 and 7 are improper because they do not seek production of any particular documents or items to be produced. Defendant argues that plaintiff's requests for defendant to preserve camera footage is improper.

The undersigned agrees that requests 6 and 7 do not seek the production of evidence, as required by Federal Rule of Civil Procedure 34. However, "[a] party must preserve evidence it knows or should know is relevant to a claim or defense of any party, or that may lead to the discovery of relevant evidence." Compass Bank v. Morris Cerullo World Evangelism, 104 F.Supp.3d 1040, 1051 (S.D. Cal. 2015). Defendant has a legal duty to preserve the videotapes regarding the October 14, 2015 incident. For this reason, plaintiff's motion to compel with respect to requests 6 and 7 is denied as unnecessary.

Request 8 states, "Pursuant to Fed. R. Civ. P. 34(a), give plaintiff the camera footage at C-Facility dated October 14, 2015 so a court in camera review can be conducted by the court to observe the occurrences at C-facility CSP-Sacramento on October 14, 2015." (ECF No. 75 at 19.)

With respect to request 8, in the opposition defendant argues that plaintiff reviewed the video footage from the October 14, 2015 incident at his institution on April 26, 2019, two days before he mailed the motion to compel. (ECF No. 76-1 at 2; ECF No. 76-2 at 1-2.) Plaintiff reviewed the footage for thirty minutes, and then advised the officer supervising him that he was finished. (ECF No. 76-2 at 2.) Plaintiff did not indicate to the officer any dissatisfaction with the review. (Id.) Defendant asserts that plaintiff viewed all the footage of the October 14, 2015 incident. (ECF No. 76-1 at 2.) Defendant argues that was why his response was deficient and what further response plaintiff wants is unclear.

In the reply to defendant's opposition, plaintiff appears to concede that he is not entitled to possess the video footage from the incident. Plaintiff argues that defendant did not provide him with all the relevant video footage. (ECF No. 80.) Plaintiff argues that there are cameras all around the yard and defendant did not provide him with the camera footage from all of the cameras from that date. (Id. at 2.) Plaintiff argues that he needs to review the video tape from the

9

1  entire yard including the front of the law library, program office, package and canteen area and
2  the main kitchen/laundry/work area.  (Id.)  Plaintiff argues that at the time of the incident, there
3  were prison staff in these areas also.  (Id.)  Plaintiff alleges that defendants only provided him
4  with video footage from the front of the chapel area.  (Id.)

Int the motion for a subpoena, plaintiff requests that the court issue a subpoena for the video footage from C Facility yard on October 14, 2015, from 9:30 a.m. to 11:00 a.m., for the area in front of the chapel, law library, program office, canteen area, work center, main kitchen and laundry entrance door.  (ECF No. 78.)  Plaintiff argues that before the incident, prison guards were standing in front of these areas.[4]  (Id.)

Int the opposition to plaintiff's motion for issuance of a subpoena, defendant states that plaintiff believes that there is additional footage depicting the October 14, 2015 event but there is not.  (ECF No. 83.)  In support of this claim, defendant cites the declaration of K. Steele, attached to the opposition.  (ECF No. 83-1.)  In relevant part, K. Steele states that an ISU Officer reviews any footage pertaining to an incident on the day of the incident and preserves the footage of the incident.  (Id. at 2.)  The footage is retained as evidence by ISU.  (Id.)  Footage not depicting the incident is not retained and the media upon which the camera records is reused, such that older footage is written over by newer footage.  (Id.)  CSP-Sac does not have the resources to store and preserve video footage unrelated to any particular incident.  (Id.)

K. Steele states that he was asked by the Office of the Attorney General to verify the extent of the video footage preserved by CSP-Sac for the incident that occurred on October 14, 2015.  (Id.)  Per the 837-C report of ISU Officer Waller, video evidence of the incident was preserved pursuant to institutional protocols on the day of the incident.  (Id.)  K. Steele verified that the footage described in Waller's report is the only video footage of the incident.  (Id.)  There is approximately fourteen minutes of footage, which shows views from three yard cameras about

---

[4] In the complaint, alleges that before the incident, he noticed that everything was closed, such as the gym, law library, canteen, package room, etc. (ECF No. 1 at 6.) Plaintiff alleges that defendant Johnson, and the dismissed defendants, were standing out on the yard "as if they were waiting for an incident between inmates to occur." (Id.) Plaintiff alleges that before the incident, defendants were looking in the area of the yard where plaintiff was required to stay. (Id. at 7.)

10

one minute before the incident, the incident itself and activity on the yard after the incident. (Id.)

Based on the information in K. Steele's declaration, discussed above, it appears that the video footage plaintiff viewed on April 26, 2019, is the only video footage in existence at this time regarding the October 14, 2015 incident. According to K. Steele, any video footage from other areas of the C Facility yard on October 14, 2015 no longer exists.

In request 8 and the motion for issuance of a subpoena, plaintiff seeks evidence that does not exist, i.e., additional videotapes of the October 14, 2015 incident. The court cannot order defendant to produce evidence that does not exist. For this reason, plaintiff's motion to compel with respect to request 8 and plaintiff's motion for issuance of a subpoena are denied.

C. Interrogatory 25

Interrogatory 25 asks, "Please tell Plaintiff in Specific Detail the name of all staff members who can help plaintiff locate the camera footage at CSP-Sacramento on October 14, 2015." (ECF No. 75 at 16.)

In the opposition to the motion to compel, defendant states that he responded to this interrogatory by informing plaintiff that he would be provided with an opportunity to review the video footage. (ECF No. 76 at 3.) Defendant argues that because plaintiff was provided with an opportunity to review the video footage, his premise for why he needs the names requested in interrogatory 25 is false. (Id.)

The undersigned agrees with defendant that plaintiff does not require the names of staff who can help plaintiff locate the video footage he has already seen. To the extent plaintiff seeks the names of staff who can help him locate additional video footage of the October 14, 2015 incident, there is no additional video footage. For this reason, plaintiff's motion to compel defendant to identify staff who can help plaintiff locate additional video footage is denied.

V. Plaintiff's Motion to Amend the Scheduling Order

Plaintiff requests that the court amend the scheduling order due to his pending discovery motions. (ECF No. 79.) Because the instant order resolves plaintiff's pending discovery motions, the motion to modify the scheduling order is denied.

////

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to compel (ECF No. 75) is denied but for request for admission 9; within fourteen days of the date of this order, defendants shall serve plaintiff with a further response to request for admission 9;

2. Plaintiff's motion for issuance of a subpoena (ECF No. 78) is denied;

3. Plaintiff's motion to amend the scheduling order (ECF No. 79) is denied.

Dated: July 31, 2019

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Han1173.com